[Cite as *State v. Locke*, 2018-Ohio-27.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JONAH A. LOCKE | : | Case No. 17-COA-019 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Ashland County
Court of Common Pleas, Case No.
16-CRI-096

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      January 2, 2018

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER R. TUNNELL
Prosecuting Attorney

By: VICTOR R. PEREZ
Assistant Prosecuting Attorney
110 Cottage Street
Ashland, Ohio 44805

For Defendant-Appellant

CHRISTINA I REIHELD
P.O. Box 532
Danville, Ohio 44304

*Baldwin, J.*

{¶1}   Defendant-appellant Jonah A. Locke appeals his conviction and sentence from the Ashland County Court of Common Pleas on three counts of public indecency. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On May 12, 2016, the Ashland County Grand Jury indicted appellant on three counts of public indecency in violation of R.C. 2907.09(A)(1). While two of the counts were felonies of the fifth degree, the other count was a misdemeanor of the first degree. At his arraignment on May 20, 2016, appellant entered a plea of not guilty to the charges.

{¶3}   Subsequently, a jury trial commenced on April 18, 2017. At the trial, Leann Love testified that she lived on Vine Street and was outside cleaning her car on April 25, 2016 at approximately 3:00 p.m. when she made eye contact with a man who was shirtless and wearing sweatpants. After the man crossed the street and started to approach her, Love walked to the back of her house. She identified appellant at trial as the man. According to Love, the two met in her backyard. When the man was closer to the front of Love's house, she went into the house and locked the doors because she was nervous. The man then walked away.

{¶4}   Later the same day, Love saw on Facebook that the Sheriff's Office were looking for the man that she had observed in her neighborhood. She called the police and told them that their description of the man was "off". The police description described the man as Hispanic and "a lot taller and bigger than the person that I saw." Trial Transcript at 107. Love was unable to identity the person who she had seen when shown two

different sets of photo lineups. After the police arrested a suspect, they contacted Love and asked her to look at the man's picture online. Love looked online and identified appellant as the person who she had seen on that day. At trial, she testified that she was 100% sure that appellant was that person.

{¶5}    On cross-examination, Love testified that she had described the man to police as white, between 5'8" and 5"10" with a pock marked face and wearing dark pants with a white shirt over his head. On redirect, she testified that she picked appellant's picture out of 40 photographs online.

{¶6}    C.K. testified that she was ten years old on April 25, 2016 and was at her house sitting on a trampoline in her backyard on Vine Street. She testified that a man who was shirtless wearing sweatpants with a dark blue sweatshirt tied around his head was walking around her garage heading towards her. The man walked around the garage once towards Vine Street and then came back. C.K. testified that the man told her to look and that when she did, the man pulled down his pants and was not wearing any underwear. She testified that she saw the man's penis and became scared. C.K. identified appellant in court as the man. She further testified that she picked appellant out of a photo lineup shown to her by the police and was "very sure" that appellant was the man. Trial Transcript at 123.   C.K. later testified that she was able to see the man's face and that appellant was the man.

{¶7}    The next witness to testify was Bruce Cassidy. He testified that he lived in the Barbara Lanes Apartments and that, on April 25, 2016, when he was backing out of his parking spot, he noticed appellant walking down the sidewalk behind the vehicles.  He

testified that appellant had a ponytail and was wearing dark clothes. Cassidy testified that he had not seen appellant before and did not see him again.

**{¶8}** Kedrick Brown next testified that on April 25, 2016, he was at his home on Sloan Avenue. He testified that he saw appellant wearing dark sweatpants with a shirt tied around his head walking around the Barbara Lanes Apartments in his backyard. Brown testified that he saw appellant exposing himself to the two little neighbor girls. According to Brown, appellant was "waiving his penis, he wanted them to see what he had." Trial Transcript at 141. He testified that the girls then took off running towards the house terrified while appellant walked towards the back of Barbara Lane. Brown was unable to identify appellant out of the first photo lineup shown to him by police, but identified appellant out of a lineup shown to him two or three days later. He testified that he was 210% sure that appellant was the man who he saw in the second lineup.

**{¶9}** On cross-examination, Brown testified that he described the man to police as being a white male between 5'9" and 6 feet wearing dark colored sweatpants with a white shirt wrapped around his head.

**{¶10}** Kathleen Nell, the great grandmother of the two girls who appellant exposed himself to, testified that she lives on Sloan Avenue with her great grandchildren and that the two girls were three years old on April 25, 2016. Nell testified that the two girls ran up to her upset and screaming that the "nasty man wanted us to see his dick and suck his dick,…" Trial Transcript at 153. She testified that they had never heard the word "dick" before. According to Nell, she saw someone going around the Barbara Lane Apartments behind her house and had never seen the man, who had a shirt tied around his head, before. At trial, she identified appellant as the man who she saw walking behind her house

by the Barbara Lanes Apartments.  She further testified that the two girls saw appellant's picture in the newspaper and pointed to his photograph while acting scared. Nell further testified that the picture of appellant in the newspaper was the same man who she saw on April 25, 2016.

{¶11}  At trial, Barbara Edwards testified that she lives in an apartment complex on East Main Street in Ashland, Ohio. She testified that on April 29, 2016, she was smoking a cigarette with her neighbor on her neighbor's patio when a man walked by wearing a light gray windbreaker tied around his face and dark gray sweatpants.  She identified appellant in court as the man.   Edwards testified that when she saw appellant standing by a tree, he pulled down his sweatpants to mid-thigh so that she was able to see his genitals. Edwards testified that she then walked towards appellant and "asked him what the fuck he was doing." Trial Transcript at 171. Appellant just stood there with his pants down looking at her and started touching himself.  Appellant then pulled up his pants "with his hand still on his penis and balls and was masturbating." Trial Transcript at 172.  Edwards checked the Sheriff's Department website booking photos and identified appellant as the person who she saw on April 29, 2016. When asked, she testified that she did not know his name and that there were more than 30 photos on the website. She testified that she had never seen appellant before. Edwards identified appellant at trial as the person who she saw on April 29, 2016.

{¶12}  On cross-examination, Edwards testified that she wears glasses and that her vision is blurry without them. She agreed that she told the police that she was not wearing the glasses at the time of the incident. The following is an excerpt from her testimony at trial**:**

**{¶13}** Q: And I think that you talked on a couple different occasions to the police, I have May 6th and also the date of the incident, you said or clarified that you did not have the glasses on and did not see Locke's penis, do you remember saying that?

**{¶14}** A: I could not really see, but like an outline, but could not define size, it was blurry, but it's not, it's blurry, but not defined. I could not tell you size. I am not trying to be gross.

**{¶15}** Q: Like I said, I have two separate accounts where you say on both occasions that you never saw his penis?

**{¶16}** A. Well, the pants were down to here.

**{¶17}** Q. Okay. So obviously – so you are assuming that his penis was out?

**{¶18}** A: Well, no, it was.

**{¶19}** Trial Transcript at 180. She testified that while she could not describe appellant's penis, she could tell that "his junk was out." Trial Transcript at 183.

**{¶20}** Melissa Cousins testified that on April 29, 2016, she was on her porch smoking with Edwards when they saw a man come around the two buildings. The two said hello to the man who put his head down and kept walking. She testified that the man was wearing dark gray sweats and a lighter gray hoodie with the hood up. Cousins testified that soon after, she observed the man by a tree and was unable to tell if he was urinating or exposing himself. The man then started walking away with his hands down his pants. Cousins testified that she took two pictures of the man walking away using her cell phone. When asked when she next saw the man, she testified that she viewed the Sheriff's Department website after hearing that someone had been arrested and picked appellant out of more than 20 photos on the website. She testified that she identified him

because of his eyebrows and that she was 100% sure of her identification. Cousins identified appellant in court as the man who she saw on April 29, 2016.

**{¶21}** On cross-examination, Cousins testified that she could not see appellant's private area but could see that he had his hands down his pants. On redirect, she testified that she had briefly seen appellant from the hoodie jacket around his face.

**{¶22}** Ashland Police Officer Aaron Kline testified that he was on duty on April 29, 2016 when he received a call about a suspect who was alleged to have exposed himself. The suspect was described as dressing in gray with jogger style pants and a hoodie. Officer Kline saw a man in the area who matched the description phoned in over the radio. The man had a hoodie style shirt pulled over his head. Officer Kline identified appellant as the person who was later located under a pile of debris in a garage. Detective Kimberly Mager of the Ashland Police Department testified that she served as a blind administer of the photo lineups for the witnesses in this case. She testified that a lineup was administered to Kedrick Brown on April 29, 2016 and that he identified number 5, appellant. On the same day, she administered a lineup to C.K. who also picked number 5, appellant.

**{¶23}** On cross-examination, Detective Mager testified that she also gave Kedrick Brown a photo lineup on April 26, 2016 and that he mentioned photos 3 and 5 as the possible suspect. She testified that appellant was not in the lineup. She further testified that when she administered the lineup on April 29, 2016, Brown picked out two people but picked out one more than the other. Appellant was in the lineup on April 29, 2016.

**{¶24}** At the conclusion of the evidence and the end of deliberations, the jury, on April 19, 2017, found appellant guilty of all of the charges. As memorialized in a Judgment

Entry filed on May 31, 2017, appellant was sentenced to one year in prison for Count 1 and to a concurrent 90 days in jail for Count 3. With respect to the remaining Count, appellant was placed on community control for a period of three years.

**{¶25}** Appellant now raises the following assignment of error on appeal:

**{¶26}** I. APPELLANT LOCKE'S CONVICTIONS FOR PUBLIC INDECENCY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I

**{¶27}** Appellant, in his sole assignment of error, argues that his convictions for public indecency were against the manifest weight of the evidence. We disagree.

**{¶28}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E. 2nd 541, superseded by constitutional amendment on other grounds as stated by *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶29}** Appellant's argument focuses on the credibility of the witnesses. Appellant contends that the evidence shows that appellant did not match the early description of the alleged offender and that several witnesses identified other individuals in a photo

lineup as the possible perpetrator. Appellant also argues that various factors impaired the reliability of the witnesses. Appellant notes that, for example, that Edwards admitted to not wearing her prescription glasses on the day in question.

**{¶30}** However, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 231, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 1997-Ohio-260, 418, 674 N.E.2d 1159. The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶31}** In the case sub judice, we cannot say that the jury clearly lost its way in convicting appellant of public indecency. As is stated above, Leann Love testified that she looked online and identified appellant as the person who she saw on that day. At trial, she testified that she was 100% sure that appellant was that person. There was testimony that C.K identified appellant from the photo lineup and did not identify anyone else. She also identified appellant in court. While Kedrick Brown was unable to identify appellant

out of the first photo lineup shown to him by police, which did not contain appellant's photo, he identified appellant out of a lineup shown to him two or three days later and testified that he was 210% sure that appellant was the man who he saw. He also identified appellant in court as the man who had exposed himself to the two girls.

**{¶32}** In addition, Kathleen Nell identified appellant at trial as the man who had exposed himself to her great grandchildren. She testified that the two girls pointed to appellant's picture in the newspaper and were scared. Both Barbara Edwards and Melissa Cousins picked appellant's picture on the Sheriff's website although there were numerous pictures of other individuals. While Edwards testified that she was not wearing her glasses and could not describe appellant's penis, she testified that she was able to tell that appellant's penis was exposed. As noted by appellee, while there were inconsistencies in the witness's descriptions of the clothing that the man was wearing, the jury, as trier of fact, was in the best position to assess their credibility. The jury clearly found the witnesses testimony as to the identification of appellant credible.

**{¶33}** Appellant's sole assignment of error is, therefore, overruled.

{¶34} Accordingly, the judgment of the Ashland County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

John Wise, J. concur.